Jonathan Shub
SEEGER WEISS LLP
550 Broad Street, Suite 920
Newark, NJ 07102
Tel.: (973) 639-9100
Fax: (973) 639-9393
jshub@seegerweiss.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MELISSA PEARSON**<br><br>**Plaintiffs,**<br><br>v.<br><br>**INTUITIVE SURGICAL, INC.,**<br><br>**Defendants** | **Civil Action No._____**<br><br><br>**COMPLAINT & JURY DEMAND** |

Plaintiff, MELISSA PEARSON, by and through counsel, for her Complaint against

Defendants, alleges as follows:

### THE PARTIES

1.      The Plaintiff, MELISSA PEARSON ("Ms. PEARSON") herein is a competent

individual over the age of 18, is a resident of the United States and hereby submits to the

jurisdiction of this Court and alleges that Venue in this court is proper.

2.      Plaintiff, MELISSA PEARSON is a citizen of the State of Tennessee and, at all

relevant times, was a resident of Rutherford County, Tennessee.

3.     At all relevant times alleged herein, Defendant, INTUITIVE SURGICAL, INC. ("Defendant" or "Intuitive"), is a foreign business corporation, duly organized and existing under and by virtue of the laws of the State of Delaware with its principle place of business in the State of California. Intuitive is a publically traded company on the NASDAQ exchange, with current market value of approximately over two billion dollars.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action under 28 U.S.C. § 1332, which provides for original district court jurisdiction for actions involving diversity of citizenship and where the amount in controversy exceeds $75,000.00. Venue is proper in this district under 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

5.     Plaintiff MELISSA PEARSON underwent a robotically-assisted hysterectomy on July 16, 2013, which resulted in damages, including a postoperative pelvic abscess. Immediately following surgery, MS. PEARSON developed a 103 degree fever, suffered from severe abdominal pain and a sore throat.

6.     A CT scan of the abdomen and pelvis revealed a large irregular shaped fluid collection containing a sizeable amount of gas located in the previous site of the uterus. A subsequent drainage of the abscess occurred using a catheter and needle. MS. PEARSON remained in the hospital for six days before she was discharged with the catheter still in place. Plaintiff, MELISSA PEARSON has experienced severe pain and continues to suffer from her injuries.

2

7.     Defendant INTUITIVE is a Delaware corporation with its principal place of business in Sunnyvale, California.

8.     Defendant INTUITIVE is a publically traded company on the NASDAQ exchange, with a current market value of more than two billion dollars.

9.     Intuitive designed, manufactured, tested, sold, promoted, and labeled the da Vinci Surgical System. On its website, Intuitive represents that surgical robots cause minimally invasive surgery. The said robotic device is used in hospitals for a variety of surgeries, including gynecological, and including therein hysterectomies.

10.     Intuitive has promoted the da Vinci Surgical System as (a) safe, and (b) safer than other comparative methods of surgery, including, in the case of hysterectomies, laparoscopy, vaginal surgery, and open surgery. Intuitive uses prominent websites aimed at consumers to create demand for the use of its robotic device by patients who consult surgeons.

11.     Intuitive sold its robotic device through a calculated program of intimidation and market management, forcing hospitals and physicians to purchase it in order to appear competitive, and creating fear in their minds that if they did not have this technology, they would lose business to competitors. Intuitive reinforced this calculated program by playing on its website for potential patients, names of physicians who had performed many surgeries with the robotic device.

12.     The use of lntuitive's robotic device in surgery presents substantial risks of complications and injuries, including burns, tears, dehiscences, bleeding, hematomas, sepsis, adhesions, and fistulas.

13.     More specifically, lntuitive's robotic device can cause damage to the bowel, blood vessels, arteries, ureters, bladder, vaginal cuff, and other internal organs.

14.     In addition, due to lengthened time of surgery, patients are unnecessarily exposed to anesthesia for a dangerous period of time.

15.     These complications and injuries cause and/or contribute to the untimely and premature death of the patient.

16.     Defendant is aware of the above-alleged risks and complications associated with the use of the said robotic device. Defendant does not provide adequate warnings to physicians and patients of said risks and complications associated with the use of its robotic device.

17.     Defendant has not conducted, nor sponsored, adequate testing on its da Vinci robotic device before and after marketing it to determine whether in random tests its said device is either safer or more effective or otherwise superior to other surgical and laparoscopic methods to which it compares itself. Defendant has not performed adequate post marketing surveillance of complications and injuries that have occurred in actual practice and use of the device.

18.      Defendant has not conducted nor sponsored any testing as to long-term outcomes, in comparison to other surgical and laparoscopic methods.

19.     Defendant has not disclosed, through publications or reports to the Food and Drug Administration and other governmental bodies, the true extent of complications and injuries, which have occurred in actual practice and use of its robotic da Vinci device. Rather, Defendant has suppressed reports and complaints of complications and performance errors due to the use of its robotic device.

20.     Defendant does not adequately train physicians nor proctor them properly on the use of its device, thereby inducing them to cause complications and injuries, which would be avoided in the hands of properly trained physicians.

4

21.     Intuitive represents that it will have skilled technicians in the operating room or on emergency call in the event of problems arising with its robotic device, but often times has neglected to do so.

22.     Intuitive has over-promoted its device to hospitals, physicians, and the public, including potential consumers. Combined with this over-promotion, Defendant has made misrepresentations that minimize the risks and complications associated with the robotic device's use.

23.     The da Vinci robotic device is defective in that it relies upon the use of monopolar energy to cut, burn, and cauterize tissue, whereas safer methods are available such as bipolar energy and ultrasonic energy. These methods would substantially reduce the risk of complications.

24.     The da Vinci robotic device also has inadequate insulation for its thereby allowing an electrical current to pass into tissue outside of the operative field. Additionally, the insulation on the shafts of the said device becomes torn and worn in places, without the awareness of the physician user, allowing electrical current to pass into tissue outside the operative field, causing damage.

25.     Defendant has failed to warn users and consumers of the said robotic device about the inadequate insulation on the arms and the potential electrical current to pass into tissue outside of the operative field.

26.     Due to design and manufacturing defects, Defendant's da Vinci robotic devices have malfunctioned during the course of operative use and have caused severe injuries to patients. Additionally, due to said defects in the da Vinci robotic device, patients have experienced post-operative injuries necessitating further surgery and medical procedures.

27.     Defendant has failed to warn users and consumers of its robotic device of the design and manufacturing defects alleged herein. Rather, Defendant has reached out directly to consumers to promote the device's claimed advantages.

28.     Defendant has obtained and continues to maintain approval of its uses of its device from the Food and Drug Administration by failing to fully inform them of its knowledge of risks and complications associated with the use of the robotic device.

29.     The true names or capacities, whether individual, corporate, or otherwise, of Defendants DOES 1 through 100, inclusive, are unknown to Plaintiff who therefore sue said Defendants by such fictitious names. Plaintiff believes and alleges that each of the defendants designated herein by fictitious names is in some manner legally responsible for the events and happenings herein referred to and caused damages proximately and foreseeably to Plaintiff as alleged herein.

30.     At all times herein alleged, the terms "Defendant" and "Defendants" include all herein named Defendants as well as Defendants DOES 1 through 100, inclusive.

31.     At all times herein alleged, each of the Defendants was the agent, servant, partner, aider and abettor, co-conspirator and joint venture of each of the remaining Defendants herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture and rendered substantial assistance and encouragement to the other Defendants, knowing that their conduct constituted a breach of duty owed to Plaintiff.

32.     There exists, and at all times herein alleged, there existed, a unity of interest in ownership between certain Defendants and other certain Defendants such that any individuality and separateness between the certain Defendants has ceased and these Defendants are the alter-

ego of the other certain Defendants and exerted control over those Defendants. Adherence to the fiction of the separate existence of these certain Defendants as an entity distinct from other certain Defendants will permit an abuse of the corporate privilege and would sanction fraud and would promote injustice.

33.     At all times herein alleged, the officers and directors of the Defendants named herein participated in, authorized and directed the production and promotion of the DEVICE when they knew, or with the exercise of reasonable care should have known, of the hazards and dangerous propensities of the DEVICE and thereby actively participated in the tortious conduct which resulted in the injuries suffered by Plaintiff.

34.     DOES 1 through 100, and each of them, acted independently of, or jointly with, other Defendants, and are all in some manner legally responsible for the events and happenings herein referred to, and caused damages proximately and foreseeably to Plaintiff as alleged herein.

## FIRST CAUSE OF ACTION- PRODUCT LIABILITY

35.     Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

36.     Defendant placed into the stream of commerce its aforesaid device which was defective in design, as previously pleaded.

37.     Defendant owed Plaintiff a duty to exercise reasonable care when designing, testing, manufacturing, marketing, advertising, promoting, distributing, and/or selling the da Vinci Robot.

7

38.     At all relevant times to this action, Defendant owed a duty to properly warn Plaintiff, the medical community, and the Public of the risks, dangers and adverse side effects of the da Vinci Robot platform.

39.     Defendant breached its duty by failing to exercise ordinary care in the preparation, design, research, testing, development, manufacturing, inspection, labeling, marketing, promotion, advertising and selling of the da Vinci Robot, as set forth below:

a.     Failing to test the da Vinci Robot properly and thoroughly before promoting the robotic surgical platform using monopolar current to the market;

b.     Failing to analyze properly and thoroughly the data resulting from the premarketing tests of monopolar current used in the da Vinci Robot platform;

c.     Failing to report to the FDA, the medical community, and the general public those data resulting from pre- and post-marketing tests of the da Vinci Robotic platform which indicated risks associated with its use;

d.     failing to conduct adequate post-market monitoring and surveillance of postsurgical complications associated with the da Vinci Robotic platform using monopolar current;

e.     failing to conduct adequate analysis of adverse event reports;

f.     designing, manufacturing, marketing, advertising, distributing and promoting the da Vinci Robot directly to consumers, including Plaintiff, without adequate warning of the significant and dangerous risks of monopolar current and the da Vinci Robot platform and without proper instructions to avoid the harm which could foresee ably occur as a result of using monopolar energy on the existing da Vinci Robot platform;

g.      failing to exercise due care when advertising and promoting the da Vinci Robot;

h.      negligently continuing to manufacture, market, advertise, and promote the da Vinci Robot after Defendant knew or should have known of the risks of serious injury and/or death associated with using monopolar current to perform certain aspects of the surgery;

i.      failing to use due care in the preparation and development of the da Vinci Robot to prevent the aforementioned risk of injuries to individuals through the use of monopolar current;

j.      failing to use due care in the design of the da Vinci Robot with special regard to the insulation of the robotic arms and instruments to prevent the aforementioned risk of injuries to individuals during the routine course of surgery;

k.      failing to conduct adequate pre-clinical testing and research to determine the safety of the use of monopolar current and the insulation of the robotic instruments to be used in robotic surgeries, with special regard to the reusing of the instruments up to ten times in ten different patients;

l.      failing to conduct adequate intra-operative surveillance and post-operative complication studies to determine the safety of the use of monopolar energy during the surgical robotic procedure, while Defendant knew or should have known that intra-operative surveillance and post-operative complication analysis would be the only means to determine the relative risk of using monopolar when performing a robotic hysterectomy causing severe thermal injury to bladder, ureter, bowel, and blood vessels, in the absence of clinical trials which cannot be conducted for this purpose, and that such surveillance would be necessary for a due diligence program that would alert Defendant to the need to change the technique for the use of monopolar

current or to withdraw it from the market altogether;

        m.      failing to completely, accurately and in a timely fashion, disclose the results of the pre-marketing testing of issues with monopolar energy and post-marketing surveillance of monopolar energy related injuries and complications to Plaintiff, consumers, the medical community, and the FDA;

        n.      failing to accompany marketing materials promoting the da Vinci Robot platform using monopolar current with proper warnings regarding all possible adverse side effects associated with the use of the same;

        o.      failing to use due care in the manufacture, inspection, and safety evaluation of the da Vinci Robot platform to prevent the aforementioned risk of injuries to individuals who underwent a da Vinci Robotic surgery;

        p.      failing to use due care in the promotion of the da Vinci Robot to prevent the aforementioned risk of injuries to individuals when the drugs were ingested;

        q.      failing to use due care in the sale and marketing of the da Vinci Robot to prevent the aforementioned risk of injuries to individuals who were to undergo robotic surgery;

        r.      failing to use due care in the selling of the monopolar scissors to prevent the aforementioned risk of injuries to individuals who underwent da Vinci Robotic surgery;

        s.      failing to provide adequate and accurate training and information to the sales representatives who sold the da Vinci Robot;

        t.      failing to provide adequate and accurate training and information to healthcare providers for the appropriate use of the da Vinci Robot;

        u.      failing to conduct or fund research into the development of safer robotic surgical instruments which would pose the least risk of causing severe thermal and other injury

to bowel, bladder, ureter, and blood vessels;

          v.     failing to educate healthcare providers and the public about the safest use of the monopolar scissors in da Vinci Robotic surgery;

          w.     failing to give healthcare providers adequate information to weigh the risks of serious injury and/or death for a given patient using the da Vinci Robot platform and technique featuring the use of monopolar current; and,

          x.     being otherwise reckless, careless and/or negligent in the design, manufacture, promotion and sales of the da Vinci Robot procedure.

40.     Defendant placed into the stream of commerce its aforesaid device, which was defective in its labeling and warnings, as previously pleaded.

41.     Defendant placed into the stream of commerce its aforesaid device, which was defective in its testing and approval, as previously pleaded.

42.     At the time the device left the possession of Defendant it was in an unreasonably dangerous and defective condition for application for robotic surgery using monopolar energy.

43.     Despite the fact that Defendant knew or should have known that the da Vinci Robot platform using monopolar current had increased the risk of serious injury and/or death, Defendant continued to promote and market the da Vinci Robot to consumers, including Plaintiff, when safer and more effective methods of treatment were available.

44.     Defendant designed, tested, manufactured, packaged, marketed distributed, promoted, and sold the da Vinci Robot, placing the da Vinci Robot into the stream of commerce.

45.     The da Vinci Robot was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendant in a defective and unreasonably dangerous condition to

consumers, including the Plaintiff.

46.     The da Vinci Robot was expected to reach, and did reach, users and/or consumers, including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which it was manufactured and sold.

47.     Plaintiff's surgeons used the da Vinci Robot platform including monopolar current as instructed by and certified by and in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendant. Plaintiff's surgeons, attended surgical labs for hands-on initial training and were proctored by proctors employed by Defendant.

48.     The da Vinci Robot platform was unreasonably dangerous in that, as designed, it failed to perform safely when used by ordinary consumers, including Plaintiff's surgeons, including when it was used as intended and in a reasonably foreseeable manner.

49.     The da Vinci Robot was unreasonably dangerous in that, as designed, the risks of serious injury and/or death, including bowel, bladder, ureteral, abscess formation, permanent scarring, or vascular injury, posed by its monopolar current risks exceeded any benefit the Robotic approach was designed to or might in fact bestow.

50.     The da Vinci Robot was unreasonably dangerous in that, as designed, it was dangerous to an extent beyond that contemplated by the medical community, and ordinary regulars, including the Plaintiff.

51.     The da Vinci Robot was defective in its design in that it neither bore, nor was packaged with, nor accompanied by, warnings adequate to alert the medical community, including Plaintiff's surgeons, to the risks described herein, including, but not limited to, the risk of serious injury and/or death, including bowel, bladder, ureteral, vaginal cuff de-vascularization, or vascular injury, posed by its monopolar current risks. The da Vinci Robot was

not accompanied by adequate labeling, instructions for use and/or warnings to fully apprise the medical, hospital, operating room and/or scientific communities, and potential patients, including Plaintiff, of the potential risks and serious side effects associated with its use, thereby rendering Defendant liable to the Plaintiff.

52.     There were safer alternative energy modalities available including bipolar energy and ultrasonic energy.

53.     Monopolar energy, as used and taught on the da Vinci Robot platform, was unsafe for normal or reasonably anticipated use in performing the colpotomy incision or the amputation of the uterus.

54.     In light of the potential and actual risk of harm associated with the use of monopolar energy so close to bowel, bladder, ureter, vaginal cuff, and blood vessels, a reasonable person who had actual knowledge of this potential and actual risk of harm would have concluded that the da Vinci Robot platform should not have been marketed in that condition.

55.     Although Defendant knew or should have known of the defective nature of its da Vinci Robot platform using monopolar current, it continued to design, manufacture, market, and promote the use of its da Vinci Robot platform so as to maximize sales and profits at the expense of the public health and safety. Defendant thus acted with conscious and deliberate disregard of the foreseeable harm caused by the continued use of monopolar energy on its robotic platform.

56.     Plaintiff could not, through the exercise of reasonable care, have discovered the risk of serious injury and/or death associated with and/or caused by the da Vinci Robot platform featuring monopolar current. Plaintiff, if aware of these additional risks, could have chosen

surgical procedures with similar efficacies but without these additional risks. As a result, Plaintiff suffered the personal injuries described herein.

57.     Information given by Defendant to the medical community and to the consumers concerning the safety and efficacy of the da Vinci Robot platform, especially the information contained in the advertising and promotional materials, did not accurately reflect the serious and potentially fatal side effects.

58.     Had adequate warnings and instructions been provided, Plaintiff's surgeons would not have suggested a robotic approach, and Plaintiff would have been at a much lower risk of the harmful side effects described herein.

59.     As a direct and proximate consequence of Defendant's negligence, willful, wanton, and/or intentional acts, omissions, misrepresentations and/or otherwise culpable acts described herein, the Plaintiff sustained injuries and damages alleged herein.

60.     That by reason of the foregoing and Defendant's aforesaid conduct, among other things, the Plaintiff suffered injuries which caused her to undergo additional surgeries and medical procedures, endured pain and suffering and will continue to do so in the future, have suffered mental anguish and will continue to do so in the future, have lost the pleasure of sexual activity, and have incurred medical expenses.

61.     Plaintiff has incurred and Defendant is liable for certain expenses, including hospital, surgical and medical treatment, and transportation costs, as a result of, among other things, Defendant's conduct.

62.     As a result of its said conduct, Defendant has become strictly liable to Plaintiff.

63.     Defendant's conduct in continuing to market, sell and distribute the aforesaid devices after obtaining knowledge they were defective and not performing as represented and

intended, showed complete indifference to and/or a conscious disregard for the safety of others justifying an award of punitive damages for aggravating circumstances in such a sum which will serve to deter defendant and others from similar conduct in the future.

**WHEREFORE**, Plaintiff, demands judgment against Defendant and seeks compensatory damages, and exemplary and punitive damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

<u>**SECOND CAUSE OF ACTION- GENERAL NEGLIGENCE &**</u>
<u>**NEGLIGENT TRAINING & PROCTORING & NEGLIGENT CERTIFICATION**</u>

64.     Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

65.     Defendant was careless in the design, testing, manufacturing, labeling and promotion of its aforesaid device, as pleaded in previous paragraphs.

66.     In specific, defendant failed to warn users and consumers of the risk of complications associated with the use of its said device, risks of monopolar current use, including the damage to the bladder, bowel, ureter, rectum and blood vessels; the rectum and bowel which was a proximate cause of the Plaintiff's injuries, additional surgeries and medical treatments resulting in long term pain and suffering.

67.     Defendant took it upon itself to "train" and "certify" Plaintiff's surgeons on the use of the da Vinci Robot platform using monopolar current. Upon belief the Defendant specifically trained Plaintiff's surgeons on the use of monopolar current via operative endoshear scissors during the dissection of the seminal vesicles leading to increased tissue damage, a large rectal laceration, and chronic inflammatory changes.

68.     Defendant did not properly proctor and/or properly instruct Plaintiff's surgeons and attending staff as to the safe use of its device nor how to detect complications which its said device causes and is known to cause.

69.     Defendant had a financial incentive to promptly train, proctor, and certify Plaintiff's surgeon without regard to whether or not Plaintiff's surgeons were truly skilled and competent on the da Vinci Robot platform.

## THIRD CAUSE OF ACTION – FRAUD

70.     Plaintiff repeats, reiterates and realleges each and every allegation and cause of action set forth herein as if the same were set forth more fully at length herein.

71.     Defendant misrepresented the safety and comparative efficacy of its device, upon which Plaintiff's surgeons relied, to Plaintiff's detriment.

72.     Defendant misrepresented the safety and comparative efficacy of its device, upon which the hospital and surgery department where Plaintiff was operated on relied, in purchasing and using the device, to Plaintiff's detriment.

73.     Defendant was aware, or should have been aware, of the known dangers of monopolar current in regard to unsuspected current leaving the shaft of a poorly insulated instrument. Furthermore, Defendant suggested to Hospitals that multiple uses of the robotic instruments could be done yet Defendant did so without regard to re-testing of the insulation along the shaft of their robotic instruments or at the wrist of the robotic instrument.

74.     Defendant was aware, or should have been aware, of the known dangers of monopolar current in regard to capacitive coupling, which like insulation failure can cause a thermal injury to occur in adjacent structures like bowel, bladder, ureter, vaginal cuff, or blood vessel. Defendant was aware, or should have been aware, of the known increased incidence of

vaginal cuff dehiscence, de-vascularization and abscess formation due to the use of monopolar current while performing the colpotomy portion of the da Vinci Robotic total laparoscopic hysterectomy.

75.    Defendant was aware that there were safer energy modalities including ultrasonic energy and bipolar energy, yet maintained teaching the use of monopolar current in the da Vinci Robotic Hysterectomy. Defendant did so based on not wanting to pay for the cost of having to license these safer energy technologies.

76.    Defendant was also aware, or should have been aware, of the Active Electrode Monitoring System, or AEM Technology, which shields and monitors instruments continuously directing stray energy, the cause of stray electrosurgical burns, away from the patient. With the AEM system, the patient is never at risk for stray electrosurgical burns due to insulation failure and capacitive coupling. Despite having specific knowledge of this safety system, the Defendant chose not to purchase it for its da Vinci Robotic Hysterectomy platform using monopolar current.

77.    Further, Defendant concealed from consumers and users, including those mentioned in the preceding paragraphs, the risks of complications of which it was aware, which would have been material to consumers and users in making the decision to use the said device.

78.    Further, Defendant suppressed reports of adverse outcomes with the use of its device, which would have been material to consumers and users in making the decision to use said device.

79.    Further, Defendant over-promoted its device and minimized its risks, for the purpose of making sales of its device, its maintenance, and the use of replaceable parts, and skewed the cost-benefit ratio inaccurately in its favor.

17

80.     The said conduct was so willful, wanton, malicious and reckless that it merits the imposition of punitive damages.

## FOURTH CAUSE OF ACTION- BREACH OF EXPRESS WARRANTY

81.     Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

82.     Defendant made express warranties of safety to the buyers and consumers of the device utilized during Plaintiffs' surgeries, upon which the buyers and users, as agents of Plaintiff, relied, to their detriment. Defendant expressly represented to the Plaintiff (and to other consumers and the medical community) that the da Vinci Robot was safe, efficacious and fit for its intended purposes that it was of merchantable quality, that it did not produce any unwarned-of dangerous side effects, and that it was adequately tested.

83.     Defendant breached expressed warranties with respect to the da Vinci Robot in the following ways:

        a.      Defendant represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, surgeon training sessions, publications, notice letters, and regulatory submissions that the da Vinci Robot was safe, and fraudulently withheld and concealed information about the substantial risks or serious injury and/or death associated with using monopolar current on the existing da Vinci Robot;

        b.      Defendant represented that the da Vinci Robot was as safe and/or safer than alternative surgical methods, and fraudulently concealed information which demonstrated that the da Vinci Robot approach was not safer than alternatives available on the market; and,

        c.      Defendant represented that the da Vinci Robot was more efficacious than other alternative surgical methods, and fraudulently concealed information that it was not more

efficacious than alternative surgical methods.

84.     The da Vinci Robot does not conform to Defendant's express representations, because it is not safe, efficacious, has numerous serious unwarned-of side effects, causes severe and permanent injuries including death, and was not adequately tested.

85.     The da Vinci Robot, including the use of monopolar current, did not perform as safely as an ordinary physician, as an agent of the patient, would have expected when used as intended or in a reasonably foreseeable manner.

86.     Plaintiff, her surgeons, and others in the medical community, relied upon Defendant's express warranties, resulting in the Plaintiff's da Vinci Robot-related injuries.

87.     Plaintiff, after ascertaining through her own injuries that the da Vinci Robot violated express warranties, hereby supply notice to Defendant of same through the filing of this lawsuit.

88.     As a direct and proximate consequence of Defendant's breach of express warranty and/or intentional acts, omissions, misrepresentations and/or otherwise culpable acts described herein, the Plaintiff sustained injuries and damages alleged herein.

89.     By selling the said device, Defendant made implied warranties of safety, merchantable quality, and fitness for use, which were breached when Plaintiff was injured during surgery.

90.     As a further direct and proximate result of the acts of Defendant, Plaintiff suffered emotional distress.

**WHEREFORE**, Plaintiff demand judgment against Defendant and seek compensatory damages, and exemplary and punitive damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

## FIFTH CAUSE OF ACTION- BREACH OF IMPLIED WARRANTY

91.     Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

92.     At all relevant and material times, Defendant manufactured, distributed, advertised, promoted, and sold the da Vinci Robot.

93.     At all relevant times, Defendant intended that the da Vinci Robot be used in the manner that the Plaintiff's surgeons in fact used it and Defendant impliedly warranted the product to be of merchantable quality, safe and fit for such use, and was adequately tested.

94.     Defendant breached various implied warranties with respect to the da Vinci Robot including the particulars:

a.     Defendant represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that the da Vinci Robot platform was safe and fraudulently withheld and concealed information about the substantial risks of serious injury and/or death associated with using the da Vinci Robot with monopolar current;

b.     Defendant represented that the da Vinci Robot with monopolar current was as safe and/or safer than other alternative surgical approaches that did not include the use of the da Vinci Robot, and fraudulently concealed information, which demonstrated that the da Vinci Robot was not safer than alternatives available on the market; and,

c.     Defendant represented that the da Vinci Robot was as more efficacious than other alternative surgical approaches and techniques and fraudulently concealed information, regarding the true efficacy of the da Vinci Robot.

95.     In reliance upon Defendant's implied warranty, Plaintiff's surgeons used the da

Vinci Robot platform as prescribed and in the foreseeable manner normally intended, recommended, promoted, instructed, and marketed by Defendant.

96. Defendant breached its implied warranty to the Plaintiff in that the da Vinci Robot platform with monopolar current was not of merchantable quality, safe and fit for its intended use, or adequately tested.

97. As a direct and proximate consequence of Defendant's breach of implied warranty and/or intentional acts, omissions, misrepresentations and/or otherwise culpable acts described herein, the Plaintiff sustained injuries and damages alleged herein including pain and suffering.

**WHEREFORE**, Plaintiffs demand judgment against Defendant and seeks compensatory damages, and exemplary and punitive damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

## SIXTH CAUSE OF ACTION- UNJUST ENRICHMENT

98. Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

99. At all times relevant to this action, Defendant designed, advertised, marketed, promoted, manufactured, distributed, supplied, and/or sold the da Vinci Robot.

100. Plaintiff's surgeons' hospitals purchased the da Vinci Robot from the Defendant for the purpose of using it for robotic surgery. The same hospitals purchased disposable and reusable instruments for the performing of Plaintiff's surgeries.

101. Defendant has accepted payment from said aforementioned hospital for both the da Vinci robot used in Plaintiff's surgeries, but also for the routine maintenance and per surgery cost of additional items including disposable items.

21

102.    Plaintiff did not receive the safe and effective surgical product which she intended to purchase; nor did the hospital where Plaintiff's surgeries were performed.

103.    It is inequitable and unjust for Defendant to retain this money because the Plaintiff did not in fact receive the safe and efficacious surgical procedures.

**WHEREFORE**, Plaintiff demand judgment against Defendant and seeks equitable relief, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts and issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendant on each count as follows:

1.    For past and future general damages, according to proof;

2.    For past and future medical and incidental expenses, according to proof;

3.    For past and future loss of earnings and/or earning capacity, according to proof;

4.    For future medical monitoring costs, according to proof;

5.    For punitive and exemplary damages in an amount to be determined at trial

6.    For prejudgment interest on all damages

7.    For past and future mental and emotional distress, according to proof;

8.    For past and future costs of suit incurred herein;

9.    For injunctive relief, enjoining Defendants from the acts of unfair competition and untrue and misleading advertising;

10.     For a disgorgement of profits, according to proof.

11.     For such other and further relief as the Court may deem just and proper, including prejudgment interest.

All together with the interest, costs and disbursements of this action.

Dated: July 2, 2014

Respectfully submitted,


By: */s/ Jonathan Shub*
    Seeger Weiss LLP
    550 Broad Street
    Newark, NJ 07102
    Tel.: (973) 639-9100
    Fax: (973) 639-9393
    jshub@seegerweiss.com


    *Attorneys for Plaintiff*